```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     NORTHERN DIVISION
```

BALLY GAMING, INC.                                          PLAINTIFF

VS.                        CIVIL ACTION NO. 3:13-cv-1084(DCB)(MTP)

MICHAEL CALDWELL                                            DEFENDANT

                    MEMORANDUM OPINION AND ORDER

     This cause is before the Court on the defendant Michael Caldwell ("Caldwell")'s motion to dismiss **(docket entry 5)**, and motion to strike plaintiff's punitive damages claim **(docket entry 7)**. Having carefully considered the motions and the plaintiff Bally Gaming, Inc. ("Bally")'s responses, the memoranda of the parties and the applicable law, and being fully advised in the premises, the Court finds as follows:

     Bally, a Nevada corporation, brought this action against Caldwell, an officer of Delta Investments & Development LLC ("Delta"), a bankrupt Nevada corporation. Caldwell is a resident citizen of the State of South Carolina. Caldwell moves to dismiss pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(2), and 12(b)(6) on grounds of lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim for which relief can be granted.

     Delta was the owner and operator of the Grand Station Casino ("Casino"), which it operated on a vessel located in Vicksburg, Mississippi, known as the "Star of Vicksburg" ("Vessel"), and the

Grand Station Hotel ("Hotel").  It acquired the Casino, Vessel and Hotel in December of 2010 for a purchase price of $3.25 million.  Delta then sold its interest in the Hotel in March of 2011 to Great Southern Investment Group, Inc., for $2.1 million.  Delta and Bally subsequently entered discussions regarding the use of Bally games in the Casino.  In May of 2011, Bally made a $3 million loan to Delta to be used for renovation and operation of the Casino, and Delta executed certain loan documents including a Secured Promissory Note, a Loan Agreement, and a Preferred Ship Mortgage encumbering the Vessel.  Delta subsequently defaulted on the loan.  In April of 2012, Delta filed for bankruptcy in the Southern District of Mississippi.  The proceeding has been converted to one under Chapter 7 of the Bankruptcy Code and remains pending as Case Number 12-01160-NPO.

Bally brings the present action against Caldwell for fraud, negligent misrepresentation, and director or officer liability. Caldwell asserts that he has not purposely availed himself of the jurisdiction of this Court and requests that he be dismissed for lack of personal jurisdiction.  Neither plaintiff nor defendant has requested an evidentiary hearing.  When a district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff must only make a prima facie case that jurisdiction is proper.  Quick Techs., Inc. v. Sage Group, PLC, 313 F.3d 338, 343 (5th Cir. 2002).  In determining

whether a prima facie case for personal jurisdiction exists, a court must accept the uncontroverted allegations in the plaintiff's complaint as true, and all factual conflicts contained in the parties' affidavits must be resolved in favor of the plaintiff. Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

A federal court sitting in diversity may exercise personal jurisdiction only to the extent allowed a state court under applicable state law. Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997). "A state court or a federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." Id. at 281 (quoting Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612, 616 (5th Cir. 1989)). However, if Mississippi law does not provide for the assertion of personal jurisdiction, the court need not consider the due process issue. Cycles, 889 F.2d at 616.

Mississippi's long-arm statute provides:

> Any nonresident person ... who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subject to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57. Thus, a court may exercise jurisdiction

3

over a defendant if (1) the defendant entered into a contract with the plaintiff to be performed in whole or in part in Mississippi (the contract prong); (2) the defendant committed a tort, in whole or in part, against a plaintiff in Mississippi (the tort prong); or (3) the defendant was "doing business" in Mississippi (the "doing business" prong). See Roxco, Ltd. v. Harris Specialty Chem., Inc., 133 F.Supp.2d 911, 915 (S.D. Miss. 2000).

Although Bally is a Nevada corporation, it is qualified to do business in Mississippi; therefore, it is a "resident" within the meaning of Mississippi's long-arm statute and is entitled to utilize its provisions. Breeland v. Hide-A-Way Lake, Inc., 585 F.2d 716, 720 (5th Cir. 1978)(citing C.H. Leavell & Co. v. Doster, 211 So.2d 813 (Miss. 1968)). Bally asserts that Caldwell is amenable to the personal jurisdiction of Mississippi courts under both the tort prong and the "doing business" prong. Plaintiff's Brief, p. 12.

The Mississippi Supreme Court has explained that a non-resident defendant may be "doing business" in Mississippi if "he did various acts here for the purpose of realizing a pecuniary benefit or otherwise accomplishing an object." McDaniel v. Ritter, 556 So.2d 303, 309 (Miss. 1989)(citing Restatement (Second) of Conflict of Laws § 35, Comment a (1971)). The State Supreme Court has also clarified that "[t]he long arm statute requires no direct nexus to the non-resident's business done here, only that the claim

4

be incident thereto.  The statute thus requires far less than that the liability generating conduct have occurred in Mississippi." Id.

    Bally alleges that

> ... in addition to actually traveling to Mississippi to meet with Bally regarding the loan and casino ..., Mr. Caldwell signed an application for Delta, the LLC in which he owned a majority stake, to obtain a business license in Mississippi, making Delta a Mississippi resident for long-arm purposes. ... He appeared personally before the Mississippi Gaming Commission to request permission for Delta to operate a casino in Mississippi. ... Because he was associated with a Mississippi gaming licensee, Mr. Caldwell was required to obtain a personal finding of suitability from the [S]tate Gaming Commission. ... He did so on March 24, 2011, appearing in Mississippi and pledging at a Commission meeting to "comply with all federal and state laws, including the laws of Mississippi and particularly the Mississippi Gaming Control Act"; "comply with all the policies, rules and regulations adopted by the Mississippi Gaming Commission"; "adjudicate all legal proceedings (both state and federal) relative to said license in the courts located in the state of Mississippi" and "file an annual report as required by Mississippi Gaming Commission Regulation II.A.3."

Plaintiff's Brief, pp. 13-14 (citing Exhibit E thereto at p. 11).

    As for the tort prong, the Mississippi Supreme Court has noted that this provision "contains no requirement that the part of the tort which causes the injury be committed in Mississippi." Sorrells v. R&R Custom Coach Works, Inc., 636 So.2d 668, 672 (Miss. 1994).  "[P]ersonal jurisdiction over a defendant who allegedly committed a tort is proper if any of the elements of the tort - or any part of an element - takes place in Mississippi." Jobe v. ATR Marketing, Inc., 87 F.3d 751, 753 (5th Cir. 1996).

Bally alleges that Caldwell committed the intentional tort of fraudulent representation, which requires proof of multiple elements - "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." O.W.O. Invs., Inc. v. Stone Inv. Co., 32 So.3d 439, 446 (Miss. 2010). As Jobe recognizes, the occurrence in Mississippi of any of these elements, or any part of an element, is sufficient to bring the non-resident defendant within the ambit of the long-arm statute. Jobe, 87 F.3d at 753.

Bally alleges:

> Delta operates a casino located in Mississippi and is registered to do business in the State of Mississippi. Although Bally has refuted Caldwell's assertion that he was never personally present in the State of Mississippi (Adam Whitehurst's Declaration, attached as Exhibit A, establishes for purposes of this motion that Caldwell made direct representations to representatives of Bally regarding the purported use of the loan proceeds in Mississippi), Caldwell's other actions on behalf of Delta nevertheless occurred in this state, the state where Delta agreed to litigate all disputes, even if he was not physically in the state. Here, activity undertaken by Delta at Mr. Caldwell's direction in Mississippi - its purchase, ongoing operation, and disposition of the assets of a casino in Vicksburg - are integral to a number of the elements of a fraud claim, including reliance and injury. ... These actions took place in Mississippi and form "part of an element" of the intentional fraud. Jobe, 87 F.3d at 753.

Plaintiff's Brief, pp. 16-17.

The Court finds that Bally has set forth sufficient facts to make a prima facie showing that Caldwell is amenable to suit under both the "doing business" and tort prongs of Miss. Code Ann. § 13-3-57.  In addition to satisfying the long-arm statute, Bally must also show that Caldwell has "certain minimum contacts with {Mississippi] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "These contacts must amount to something more than occasional 'fortuitous' instances where the defendant had in the past come into some casual, isolated contact with an in-state resident." McDaniel, 556 So.2d at 309 (citing Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)(additional citation omitted)).

"'Purposeful activity' by a non-resident in the forum state may subject him to in personam jurisdiction there.  If a nonresident corporate or individual defendant has 'purposefully availed itself of the privilege of conducting activities within the forum state,' then it is considered not 'unfair' that the nonresident's important rights be adjudged in that forum." Id. (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)(additional citations omitted)).  For purposes of the due process inquiry, there are two types of jurisdiction: general and specific. Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 484 (5th Cir. 2008).

Specific jurisdiction exists where the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). General jurisdiction exists where the defendant has maintained "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Bally asserts that Caldwell has subjected himself to specific jurisdiction:

> All of the elements ... - voluntariness, foreseeability of litigation, and intent to form an ongoing business relationship - are evident in the record of Mr. Caldwell's effort to develop a gaming business in Mississippi. He appeared at the Gaming Commission to obtain the individual suitability determination required for him to operate a casino in the State. There, Mr. Caldwell received approval to run a Mississippi casino for nine years. And he acknowledged the possibility that he might be "haled into court" in Mississippi as a result of his activities in the State: "[L]icensee agrees to adjudicate all legal proceedings (both state and federal) relative to said license in the courts located in the State of Mississippi."

Plaintiff's Brief, p. 18. Furthermore, "specific jurisdiction is bound up with the claim asserted - it is claim-specific." Willow Bend, LLC v. Downtown ABQ Partners, LLC, 612 F.3d 390, 393 (5th Cir. 2010). Caldwell insists that the business he conducted in Mississippi was as an officer on behalf of Delta, and not in his individual capacity. But Bally claims that Caldwell committed a tort at least in part in Mississippi when he fraudulently misrepresented his intended use of the loan proceeds, thus

directing his intentional act at the forum state.  See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 272 (5th Cir. 2006)(stating it was "immaterial" whether the defendant acted within the scope of his employment because he directly committed the allegedly tortious action in the forum state); Lewis v. Fresne, 252 F.3d 352, 359 n.6 (5th Cir. 2001)(recognizing specific jurisdiction over the president of the defendant corporation regarding plaintiff's fraud claim, where the president "deliberately misled" the plaintiff in order to get the money needed to keep the corporation "afloat"); Calder v. Jones, 465 U.S. 783, 790 (1984)("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there.  On the other hand, their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually.").

Bally has made a prima facie showing of sufficient "minimum contacts."  Finally, the Court must determine that an assertion of jurisdiction would not offend "traditional notions of fair play and substantial justice."  International Shoe, 326 U.S. at 316.  The Fifth Circuit has commented that rarely will jurisdiction be unfair if minimum contacts have been established.  Wein Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999).  The burden is on the defendant to show the exercise of jurisdiction would be unfair. Id.  In making its determination, the Court considers "the burden

9

on the defendant having to litigate in this forum; the forum state's interests in the lawsuit; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." Id. (citations omitted). The Court finds that the burden on Caldwell in having to litigate in Mississippi is the only factor that weighs in his favor. The remaining factors all weigh in favor of this Court's exercise of jurisdiction. The defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) shall therefore be denied.

The Court notes that this finding is not final, and a prima facie showing of personal jurisdiction does not eliminate the need for a final determination at a later stage of litigation. See Star Brite Distributing, Inc. v. Gavin, 746 F.Supp. 633, 635 (N.D. Miss. 1990). An "adverse jurisdictional ruling at the pre-trial state [does] not foreclose ... [a] defendant from holding [the plaintiff] to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence." Mullins v. Testamerica, Inc., 564 F.3d 386, 399 (5th Cir. 2009)(citing Travelers Indem. Co. v. Calvert Fire Ins. Co., 798 F.2d 826, 831 (5th Cir. 1986)(additional citations omitted)).

Next, the defendant seeks to have the plaintiff's fraudulent representation claim dismissed on two grounds: failure to state a

10

claim upon which relief can be granted pursuant to Rule 12(b)(6)), and failure to plead fraud with particularity under Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The nine elements of a fraudulent representation claim, as set forth in O.W.O. Invs., have already been listed by the Court. Bally alleges that Caldwell, when he executed the contract on behalf of Delta, represented that the funds would be used for the purposes set forth in the contract, but knew when he made the representation that the funds being advanced would not be used for such purposes, and knew that Delta would not repay the funds. Bally also alleges that it relied on this representation to its detriment. Caldwell is alleged to have taken $500,000 of the funds for his personal use, and to have transferred approximately $1,300,000 to Great Southern Investments, Inc., with no expectation of repayment. Plaintiff's Brief, p. 4. Bally further alleges that Caldwell "made these representations and procured the loan from Bally 'with full knowledge that he intended to use the Loan's proceeds for purposes other than those reasons that he represented to Bally the Loan's proceeds would be used for' and knowing that Delta 'would be incapable of repaying the Loan.'" Plaintiff's Brief, p. 5 (quoting Complaint, ¶ 15). The Court finds that the plaintiff has pled its fraud claim with particularity, and

has stated a claim on which relief can be granted.

In addition, Bally brings claims for negligent misrepresentation, tortious breach of contract, and breach of the implied covenant of good faith and fair dealing. The first of these in based on the theory that at the time Caldwell made his misrepresentations, he should have known, through the exercise of reasonable diligence, that they were false, and thus he could have prevented Bally's reliance thereon. The latter two claims share in common the theory that Caldwell intentionally breached the contract with Bally with malicious intent to deceive and with reckless disregard for Bally's rights, and that Caldwell's use of the funds for purposes other than those contemplated by the contract injured Bally's right to have its loan repaid under the contract. As an alternative to Caldwell's individual liability, Bally alleges Caldwell's liability for Delta's torts as the manager and controlling interest holder in Delta, and alleges that Caldwell directed, consented to, and acquiesced in the commission of Delta's tortious acts. The Court finds that these allegations state a claim upon which relief can be granted.

Finally, Caldwell asserts that the Court lacks subject matter jurisdiction over this action because Bally is asserting a claim for the fraudulent transfer of Delta's funds, which are property of the bankruptcy estate. "A typical fraudulent transfer claim is perhaps the paradigmatic example of a claim that is 'general' to

12

all creditors .... It is normally the debtor's creditors, and not the debtor itself, that have the right to assert a fraudulent transfer claim outside of bankruptcy, but in bankruptcy such a claim is usually brought by the trustee, for the benefit of all creditors. This is because the claim is really seeking to recover property of the estate." Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.), 522 F.3d 575, 589 n.9 (5th Cir. 2008). However, "overlapping allegations may give rise to a multiplicity of claims." In re Bernard L. Madoff Invest. Secs. LLC, 740 F.3d 81, 91 (2nd Cir. 2014). In In re Seven Seas Petroleum, Inc., 522 F.3d 575 (5th Cir. 2008), the Fifth Circuit noted:

> The filing of a bankruptcy petition creates an estate that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case. ... However, the trustee has no right to bring claims that belong solely to the estate's creditors.
>
> Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. ... As part of this inquiry, we look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury. ... ("The injury characterization analysis should be considered as an inseparable component of whether an action belongs to the [estate] or [creditor].") "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. ... "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the

13

> debtor as of the commencement of the case, and thus is not property of the estate.

Id. at 584 (citations omitted).

> The Fifth Circuit also observed that

>> the existence of common parties and shared facts between the bankruptcy and the bondholders' suit does not necessarily mean that the claims asserted by the bondholders are property of the estate. Indeed ... it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct. ... ("Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy [for purposes of finding bankruptcy jurisdiction].").

Id. at 585 (citations omitted).

Bally acknowledges that any claim to recover a fraudulent transfer belongs to the Trustee, but also asserts that it is not asserting any claim for the fraudulent transfer of Delta's funds. Instead, Bally insists it is asserting a direct claim against Caldwell for his direct torts against Bally and based on his participation as an officer in the torts of Delta. Under Mississippi law, an officer or director who directly participates in a tort can be held directly liable:

> A director, officer, or agent is liable for the torts of the corporation or of other directors, officers, or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.

<u>Turner v. Wilson</u>, 620 So.2d 545, 548-49 (Miss. 1999); <u>see also</u> <u>Mims v. Frady</u>, 461 F.Supp. 736, 740 (D.C. Miss. 1978)(finding that a disclosed agent had direct liability for fraud when he entered into contracts on behalf of his principal knowing that his principal would not perform).

Under the Bankruptcy Code, a debt against a joint debtor is not affected by the bankruptcy. The Fifth Circuit has held that the Bankruptcy Code "prohibits the discharge of debts of nondebtors." <u>In re Zale Corp.</u>, 62 F.3d 746, 760 (5th Cir. 1995)." Furthermore, "[a] discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. [11 U.S.C. §] 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable." <u>In re Edgeworth</u>, 993 F.2d 51, 53 (5th Cir. 1993).

A suit to avoid a fraudulent transfer is brought by the bankruptcy trustee against the transferee to avoid a transfer made without consideration. 11 U.S.C. § 548(a). In contrast, Bally is asserting its own rights under Mississippi law to avoid any transfer made to defraud creditors. <u>See</u> Miss. Code Ann. §§ 15-3-107, 15-3-111. The remedy is against the property and the current party in possession. Miss. Code Ann. § 15-3-111. Bally admits that "[i]f [it] filed suit against Great Southern, or even Caldwell himself, to recover the funds transferred, then such a suit would be a fraudulent transfer claim belonging to the estate," but also

15

denies that any such claim is pled or intended in Bally's complaint. Bally's Memorandum, pp. 23-24. Bally does not bring a claim to pierce the corporate veil, but instead alleges that Caldwell has direct liability to Bally in tort both individually and as an officer or director of Delta, and seeks to recover compensatory damages. The Fifth Circuit has held that suits against co-debtors are not stayed by 11 U.S.C. § 362(a)'s automatic stay. See Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544 (5th Cir. 1983); Arnold v. Garlock, Inc., 278 F.3d 426, 436 (5th Cir. 2001).

Bally's claims relate to its particular dealings with Caldwell and its reliance on his representations, not to an alter ego relationship between Caldwell and Delta. In other words, Bally alleges specific torts on the part of Caldwell against a particular creditor, Bally. In In re Schimmelpenninck, 183 F.3d 347 (5th Cir. 1999), the Fifth Circuit held that "the creditor is the proper party to advance" actions "that affect only that creditor personally." Id. at 360.

The Court finds that, regardless of any actions which may be taken by the bankruptcy trustee regarding fraudulent transfers, Bally has stated an independent claim, and Caldwell's motion to dismiss pursuant to Rule 12(b)(1) shall be denied.

Caldwell also brings a motion to strike Bally's claim for punitive damages, pursuant to Fed.R.Civ.P. 12(f), on grounds that

the Loan Agreement between Bally and Delta contains a "Limitation of Liability" clause which provides:

> No claim may be made by either party against the other or its Affiliates, directors, officers, or employees, for any special, indirect, or punitive damages, including loss of profits, in respect of any claim for breach of contract or any other theory of liability arising out of or related to the transactions contemplated by this Agreement or any other loan document ....

Loan Agreement, § 8.2.

The Court finds that the motion to strike is premature. Bally alleges that the Loan Agreement was fraudulently induced. Under Mississippi law, if a written contract is procured by fraud, the defrauded party is allowed to come forward with proof that would avoid the contract's terms. Telephone Man, Inc. v. Hinds County, 791 So.2d 208, 210 (Miss. 2001). The Court finds that the enforceability of the limitation of liability clause is not a matter that should be determined on a motion to strike.

The Court therefore directs the parties to proceed with discovery. The rulings of the Court in this opinion regarding motions to dismiss do not foreclose the parties from revisiting the issues once discovery is completed.

Accordingly,

IT IS HEREBY ORDERED that the defendant Michael Caldwell's motion to dismiss **(docket entry 5)** is DENIED;

FURTHER ORDERED that the defendant Michael Caldwell's motion to strike plaintiff's punitive damages claim **(docket entry 7)** is

DENIED.

SO ORDERED, this the 28th day of March, 2014.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE